**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 28, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CHAD NATHAN HARRIS,

      Petitioner - Appellant,

v.

WALTER DINWIDDIE, Warden,

      Respondent - Appellee.

No. 10-5144
(D.C. No. 4:07-CV-00412-JHP-FHM)
(N.D. Okla.)

**ORDER DENYING**
**CERTIFICATE OF APPEALABILITY**

Before **O'BRIEN**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

This case involves the nearly ubiquitous claim of ineffective assistance of counsel

and complaints about evidentiary rulings. Chad Nathan Harris, an Oklahoma state

prisoner proceeding pro se[1] and *in forma pauperis* (*ifp*),[2] wants to appeal from the district

court's denial of his 28 U.S.C. § 2254 habeas petition. The district court concluded he

had not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. §

2253(c)(2). As that decision is not reasonably debatable, we deny his request for a

---

[1] We construe pro se pleadings liberally. *See Ledbetter v. City of Topeka Kan.*,
318 F.3d 1183, 1187 (10th Cir. 2003).

[2] The district court allowed him to proceed *ifp* on appeal.

certificate of appealability (COA) and dismiss this matter.

# I.        BACKGROUND

On June 24, 2005, Harris fatally shot Otto Reichel eight times.  Present at the time of the shooting were Harris' girlfriend, Sarah Peters, and Reichel's roommate, Brett Myers.  Both testified against Harris at trial.[3]  The jury found Harris guilty and he was sentenced to life imprisonment.

Harris filed a direct appeal.  Relevant here, he argued he was prejudiced by the admission at trial of testimony about other crimes he committed, namely: (1) he had stolen the murder weapon and (2) he and Peters stole the van they used to flee to Texas two days after the murder.  He also claimed the evidence was insufficient to support his conviction because it was based on the uncorroborated testimony of Myers and Peters, who he alleged were both accomplices to the murder.  Finally, Harris contended trial counsel was constitutionally ineffective for failing to impeach Peters with letters she sent Harris while they were in jail.  In the letters, she disavowed many of the statements she made to the police, claimed the statements were made "under duress," blamed Myers for the murder and proclaimed Harris' innocence.  (R. at 162.)  Because the letters were not part of the record, Harris contemporaneously requested the Oklahoma Court of Criminal Appeals (OCCA) order an evidentiary hearing on the claim.  Harris attached the letters to his request.

---

[3] Myers was originally charged as a co-defendant.  In exchange for his testimony at Harris' trial, the State reduced the charge to accessory after the fact.  Myers pled guilty to the reduced charge and was sentenced to fifteen years imprisonment.  Peters was charged with and pled guilty to accessory after the fact; she was sentenced to ten years in prison.

The OCCA affirmed Harris' conviction on January 30, 2006. It determined the trial court had not abused its discretion in admitting the stolen gun evidence because the evidence was relevant to show preparation. Because Harris had failed to object to the admission of the stolen van evidence, it reviewed for plain error and denied relief. It also rejected Harris' insufficiency of the evidence claim, finding the evidence, viewed in the light most favorable to the State, was sufficient for a rational jury to have found him guilty beyond a reasonable doubt. Moreover, it found Peters not to be an accomplice to the murder, contrary to Harris' claim, so corroboration of her testimony was not required. The OCCA denied Harris' request for an evidentiary hearing, concluding he had not shown by clear and convincing evidence that trial counsel was ineffective for failing to impeach Peters with the letters.

On January 3, 2007, Harris filed a petition for post-conviction relief in state court. Among other things, he claimed trial counsel was ineffective for (1) failing to investigate which, in turn, left him unprepared to effectively cross-examine the State's witnesses and (2) eliciting evidence from Myers on cross-examination implicating Harris in another shooting. Harris also said appellate counsel was ineffective for failing to raise these ineffective assistance of trial counsel claims on direct appeal. He further argued he was denied the right to a fair trial when the prosecutor misstated the evidence in opening statements. Finally, he claimed newly discovered evidence demonstrated Myers had perjured himself at trial. That evidence consisted of a letter Harris' trial counsel received in April 2005 from a Richard Anderson. In the unsigned letter, Anderson claimed that while in a holding cell with "Brett" (presumably Myers) on June 21, 2004, he overheard

Myers confess to killing "Otto." (R. at 46.) Myers also allegedly said Harris did not become involved until after the murder. Appellate counsel sent an investigator to speak to Anderson, who was unwilling to sign an affidavit attesting to the facts in the letter.

The trial court denied the petition and the OCCA affirmed on May 15, 2007. The OCCA determined the ineffective assistance of trial counsel claims and prosecutorial misconduct claim could have been but were not raised on direct appeal and therefore were waived. It also concluded there was nothing in the appellate record indicating appellate counsel's representation was deficient or that Harris had been prejudiced by that representation. Finally, the court determined the newly discovered evidence did not entitle Harris to a new trial because Anderson was unwilling to sign an affidavit attesting to the facts in the letter. The OCCA concluded the new evidence was, at best, impeachment evidence and even if it had been introduced, it would not have changed the outcome of the trial.

On July 27, 2007, Harris filed a § 2254 petition raising four grounds. First, he realleged his ineffective assistance of trial and appellate counsel claims. He also, for the first time, claimed trial counsel was ineffective for failing to object to the prosecutor's misstatement of the evidence in opening statements and appellate counsel was ineffective for not allowing him sufficient time to review the opening brief and provide comments prior to it being filed. Second, Harris claimed prosecutorial misconduct based on the prosecutor misstating the evidence in opening statements. Third, he alleged the admission of evidence concerning the stolen murder weapon and van deprived him of his right to a fair trial. Finally, Harris argued the newly discovered evidence demonstrated

the State had obtained his conviction with perjured testimony and undermined the reliability of the jury's verdict. On September 12, 2007, Harris requested and obtained leave to file an amended § 2254 petition which added a fifth claim—the insufficiency of the evidence argument he had raised on direct appeal.

The State filed a motion to dismiss the fifth claim as time-barred. The district court granted the motion, concluding it was one day late and Harris had not demonstrated grounds for equitable tolling. In a separate order, the court also rejected Harris' remaining claims. It acknowledged Harris had, on direct appeal, raised his claim of ineffective assistance of trial counsel based on counsel's failure to impeach Peters with her letters and requested an evidentiary hearing. It determined the OCCA's denial of an evidentiary hearing and its rejection of the claim on the merits were neither contrary to nor an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). It reasoned that even if counsel's performance was deficient, Harris failed to show prejudice, *i.e.*, in light of the other evidence presented at trial, there was not a reasonably probability that but for the neglected impeachment the result of the proceeding would have been different.[4]

The district court analyzed the remaining ineffective assistance of trial counsel claims to determine whether appellate counsel was ineffective for failing to raise them on

---

[4] Notably, Peters' letters also contained prejudicial information, namely, that she and Harris used drugs and a reference to her and Harris as "Bonnie & Clyde." (R. at 185.) Moreover, the letters could reasonably be read as Peters' attempt to reconcile with Harris.

direct appeal. Because the ineffective assistance of trial counsel claims lacked merit,[5] the

court determined the OCCA's rejection of the ineffective assistance of appellate counsel

claim was neither contrary to nor an unreasonable application of Supreme Court law. As

to Harris' claim that appellate counsel was ineffective for failing to provide him a copy of

the brief in time for him to review it and submit comments, the court determined he had

not exhausted the claim but even if he had, Harris had failed to demonstrate the outcome

of his appeal would have been different had he received a copy of the brief sooner.

The district court concluded the OCCA's resolution of Harris' newly discovered

evidence claim as well as his claim that he was deprived of a fair trial by the admission of

the stolen weapon and van evidence was neither contrary to nor an unreasonable

application of Supreme Court law. As to the former, the state trial court had determined

Anderson's letter lacked credibility, a finding which is entitled to deference. As to the

latter, the court said the trial court had given a limiting instruction concerning the

evidence's proper purpose and the stolen gun evidence was relevant to show preparation.

Finally, the district court held it could not reach Harris' prosecutorial misconduct claim

---

[5] Harris had not shown he was prejudiced by trial counsel's failure to investigate because he had not identified any information which could have been used to impeach witnesses nor did he point to any evidence that would have provided him a defense. The same was true for counsel's failure to object to the prosecutor's misstatement of the evidence in opening statements. The jury was instructed that the statements and arguments of counsel are not evidence and that the evidence to be considered is witness testimony, stipulations of the attorneys and the exhibits. Given these instructions, the court concluded Harris could not establish he was prejudiced by counsel's failure to object. As to counsel's eliciting evidence from Myers implicating Harris in another shooting, the court explained the same evidence also benefitted Harris because it showed Myers had sought assistance from others in pinning the murder on Harris. In any event, Harris could not show prejudice.

or the ineffective assistance of trial counsel claims based on the failure to investigate and the improper cross-examination of Myers because the OCCA had rejected them on an independent and adequate state procedural ground and Harris had failed to show either cause and prejudice for the default or a fundamental miscarriage of justice resulting from the failure to consider the claims.

## II.   DISCUSSION

A COA is a jurisdictional prerequisite to our review of a petition for a writ of habeas corpus. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). We will issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, an applicant must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotations omitted). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

We have thoroughly reviewed the entire record, the district court's order, as well as Harris' combined opening brief and request for a COA. While we disagree with the

district court that the fifth claim was untimely,[6] we nevertheless conclude the OCCA's

resolution of that claim—insufficiency of the evidence—was not "contrary to, or

involve[] an unreasonable application of, clearly established Federal law, as determined

by the Supreme Court of the United States" nor did it "result[] in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding." 28 U.S.C. § 2254(d). We agree with the district court's

adjudication of the remaining claims as they are either procedurally barred or Harris

---

[6] Harris' conviction became final on April 30, 2006, when the ninety-day time period for filing a certiorari petition with the United States Supreme Court expired. *Locke v. Saffle*, 237 F.3d 1269, 1273 (10th Cir. 2001) ("Under [§ 2244(d)(1)(A)], a petitioner's conviction is not final and the one-year limitation period for filing a federal habeas petition does not begin to run until . . . after the United States Supreme Court has denied review, or, if no petition for certiorari is filed, after the time for filing a petition for certiorari with the Supreme Court has passed.") (quotations omitted). However, because that day fell on a Sunday, he had until May 1, 2006, to file a timely certiorari petition. *See* Sup. Ct. R. 30(1). The one-year statute of limitations began the next day, May 2, 2006, so he had up to and including May 2, 2007, in which to file his § 2254 petition. *See United States v. Hurst*, 322 F.3d 1256, 1260-61 (10th Cir. 2003). However, on January 3, 2007, before the statute of limitations had expired, he filed a state court petition for post-conviction review. The statute of limitations was tolled while that petition was pending, until May 15, 2007, or a total of 132 days. *See* 28 U.S.C. § 2244(d)(2). Therefore, the statute of limitations period was extended 132 days from May 2, 2007, or until September 11, 2007. While Harris' motion to amend and proposed amended habeas petition containing the fifth claim was not filed until September 12, Harris signed the certificate of mailing for his motion to amend on September 11. The district court gave him the benefit of the "prison mail box rule." *See Houston v. Lack*, 487 U.S. 266, 270 (1988) (holding pro se prisoner's notice of appeal is timely if delivered to prison officials for mailing prior to the filing deadline); *see also Price v. Philpot*, 420 F.3d 1158, 1164 (10th Cir. 2005) (prison mailbox rule applies to filing of § 2254 petition). Applying that rule, his amended petition, including the fifth claim, is timely.

The district court erred in concluding the statute of limitations began to run on May 2, 2006, the last day for filing a certiorari petition with the United States Supreme Court. The statute did not start to run until May 3, the day following the certiorari window. *See Hurst*, 322 F.3d at 1261.

failed to show the OCCA's resolution of them satisfied the "highly deferential" § 2254(d) standard, which is "doubly so" when applied to the ineffective assistance of counsel claims. *See Harrington v. Richter*, -- U.S. --, 131 S. Ct. 770, 788 (2011) (quotations omitted).

We **DENY** a COA and **DISMISS** this matter. We **DENY** Harris's request for appointment of counsel.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge