FILED
United States Court of Appeals
Tenth Circuit

June 6, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CHARLES A. FIELDS,

      Petitioner-Appellant,

v.

DAVID C. MILLER, Warden,

      Respondent-Appellee.

No. 12-5006
(D.C. No. 4:09-CV-00553-CVE-PJC)
(N.D. Okla.)

---

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

---

Before **BRISCOE**, Chief Judge, **MCKAY** and **HOLMES**, Circuit Judges.

---

Charles Fields, an Oklahoma state prisoner proceeding pro se,[1] seeks a certificate

of appealability ("COA") to challenge the district court's denial of his application for a

writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Having thoroughly considered

---

[*]      This Order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

      After examining the appellate record, this three-judge panel determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

[1]      Because Mr. Fields is proceeding pro se, we construe his filings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Garza v. Davis*, 596 F.3d 1198, 1201 n.2 (10th Cir. 2010).

the relevant law and the record, we deny Mr. Fields's application for a COA and dismiss this matter.

## I. BACKGROUND

We take the relevant facts from the district court's opinion and order. *See* R., Vol. 1, at 262–65 (Op. & Order, filed Dec. 29, 2011). In December 2003, Tulsa police officers Jason White, Justin Demaree, and Jason Wheeler were conducting an undercover prostitution investigation at the Western Inn Motel, an establishment on Tulsa's east side known for prostitution and drug trafficking. During the course of the investigation, Mr. Fields approached Officer White and asked if he had jumper cables. Officer White responded by asking if Mr. Fields knew where to find some "work" or "hard," street terms for crack cocaine. Mr. Fields replied, "I might know where I can get something along those lines," and he led Officers White and Demaree into room 121. Present in the room were two other individuals, Earl Carter and Acamie Lawrence.

Mr. Fields sold Officer White $60 worth of crack cocaine and $10 worth of Xanax. He also gave the officers additional Xanax, saying they were "good customers." After the exchange, the officers identified themselves and took Mr. Fields into custody. A pat-down search of Mr. Fields uncovered a cell phone and several hundred dollars in cash. Additional crack cocaine was recovered from the motel-room bathroom.

Mr. Fields was charged in Tulsa County District Court with Unlawful Delivery of a Controlled Drug (Count 1), and Unlawful Possession of a Controlled Drug With Intent to Distribute (Count 2), both After Former Conviction of Two or More Felonies

2

("AFCF"). Before trial, Mr. Fields successfully moved to merge Counts 1 and 2, and the trial court dismissed Count 2. Mr. Fields, appearing pro se, was tried before a jury in September 2005; found guilty of Unlawful Delivery of a Controlled Drug, AFCF; and sentenced to a term of imprisonment of fifteen years to life. On appeal, however, his conviction and sentence were reversed. The Oklahoma Court of Criminal Appeals ("OCCA") found that Mr. Fields had not knowingly and intelligently waived his right to counsel, and it remanded the case for a new trial.

Upon remand and prior to the new trial, the prosecution offered Mr. Fields ten years' imprisonment in exchange for a guilty plea. He rejected the plea offer, and trial was held in September 2007. Mr. Fields again appeared pro se but was aided by standby counsel Marny Hill. A jury again found him guilty of Unlawful Delivery of a Controlled Drug, AFCF, and he was sentenced to a term of life imprisonment.

On appeal to the OCCA, Mr. Fields raised four propositions of error: (1) he was deprived of his federal and state constitutional rights to counsel when he represented himself at trial without being warned of the dangers of self-representation; (2) his life sentence was excessive; (3) the trial court erred by failing to instruct the jury on entrapment; and (4) the evidence against him was secured by an illegal search and should have been suppressed. In an unpublished opinion, the OCCA rejected the claims and affirmed the conviction and sentence.

Mr. Fields sought postconviction relief in state court. After being denied relief in the state district court, he appealed. The OCCA dismissed the appeal for lack of

jurisdiction because Mr. Fields did not provide a certified copy of the district court's order, as required by the OCCA's rules. Mr. Fields filed a subsequent application for postconviction relief. It, too, was denied by the state district court, and the OCCA affirmed, holding that the application was procedurally barred under Okla. Stat. tit. 22, § 1086 ("All grounds for relief available to an applicant . . . must be raised in his original, supplemental or amended application.").

In August 2009, Mr. Fields filed a habeas application in the United States District Court for the Northern District of Oklahoma. He also filed three "supplements" to his application. He sought relief on four grounds: (1) his waiver of counsel was not voluntary and he was compelled to self-representation due to a "conflict of interest" on the part of appointed counsel, Ms. Hill; (2) his life sentence was excessive; (3) the trial court erred by failing to instruct the jury on entrapment; and (4) the evidence against him was secured by an illegal search and should have been suppressed. The district court proceeded to the merits of these claims after finding that Mr. Fields properly exhausted them before the OCCA on direct appeal from his second trial. The district court denied habeas relief on all claims and also denied a COA. Mr. Fields timely filed a notice of appeal, which we construe as an application for a COA. *See Saiz v. Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004).

## II. DISCUSSION

"Before an appeal may be entertained, a prisoner who was denied habeas relief in the district court must first seek and obtain a COA . . . ." *Miller-El v. Cockrell*, 537 U.S.

4

322, 335–36 (2003); *see* 28 U.S.C. § 2253(c)(1)(A). We will issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." *Harris v. Dinwiddie*, 642 F.3d 902, 906 (10th Cir. 2011) (quoting 28 U.S.C. § 2253(c)(2)) (internal quotation marks omitted). To satisfy this standard, the applicant must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted). When, as here, the district court denies an application on the merits, the applicant carries his burden by showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Warnick v. Booher*, 425 F.3d 842, 846 (10th Cir. 2005) (quoting *Slack*, 529 U.S. at 484) (internal quotation marks omitted).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") circumscribes our review of federal habeas claims that were adjudicated on the merits in state-court proceedings. *See Byrd v. Workman*, 645 F.3d 1159, 1165 (10th Cir. 2011). An applicant is entitled to relief if, but only if, the state court's resolution of his claims "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* (quoting 28 U.S.C. § 2254(d)) (internal quotation marks omitted). This is a "highly deferential standard," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)

5

(quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)) (internal quotation marks omitted), and was meant to be "difficult to meet," *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

We review de novo the district court's legal analysis of the state-court decision. *Welch v. Workman*, 639 F.3d 980, 991 (10th Cir. 2011). But we incorporate AEDPA's deferential treatment of that decision into our consideration of a COA application. *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004). Thus, to grant a COA, we must find that reasonable jurists could debate the district court's determination that, under AEDPA, the applicant is not entitled to habeas relief. *See id.* at 937.

In his opening brief, Mr. Fields seeks a COA on three grounds: (1) his waiver of counsel was not voluntary and he was "coerced to self-representation" because he was forced to choose between "appointed counsel that was incompetent or no counsel at all"; (2) he was denied his right to put on expert witness testimony at trial; and (3) he was denied the effective assistance of appellate counsel in his second direct appeal. Aplt. Opening Br. & Appl. for COA at 6 [hereinafter "Appl. for COA"]. We review these claims in turn, ultimately denying a COA.

## A. Waiver of Counsel

Under the Sixth Amendment, an accused enjoys the right personally to make his defense, without the assistance of counsel. *Faretta v. California*, 422 U.S. 806, 819 (1975). But, because the assistance of counsel is often crucial to the assurance of a fair trial, waiver of one's right to counsel must be "knowing, intelligent, and voluntary."

6

*Maynard v. Boone*, 468 F.3d 665, 676 (10th Cir. 2006). The purpose of this requirement "is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced." *Id.* at 677 (quoting *Godinez v. Moran*, 509 U.S. 389, 401 n.12 (1993)) (internal quotation marks omitted). It is the trial court's responsibility to "ensure the defendant is 'aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.'" *Id.* at 676 (quoting *Faretta*, 422 U.S. at 835). The colloquy between the court and the accused must "demonstrate that the defendant is aware of the nature of the charges, the range of allowable punishments and possible defenses, and is fully informed of the risks of proceeding pro se." *United States v. Mackovich*, 209 F.3d 1227, 1236 (10th Cir. 2000) (quoting *United States v. Willie*, 941 F.2d 1384, 1388 (10th Cir. 1991)) (internal quotation marks omitted).

Mr. Fields claims that his waiver of counsel was not voluntary. We note that this claim has morphed throughout this litigation. On direct appeal to the OCCA after his second trial, Mr. Fields complained that the trial court did not adequately warn him of the dangers of self-representation. The OCCA denied the claim, finding that "the record clearly shows the trial court thoroughly explained to Appellant the dangers and disadvantages of self-representation." R., Vol. 1, at 135 (*Fields v. State*, No. F-2007-986 (Okla. Crim. App. Sept. 23, 2008)). In his federal habeas application, Mr. Fields claimed that he was forced to proceed pro se because his appointed counsel, Ms. Hill, was under a

"conflict of interest"—specifically, arising in his view, because she disagreed with Mr. Fields's defense strategy—and the trial court refused to appoint substitute counsel. *See* R., Vol. 1, at 268–69. In his COA application, Mr. Fields now claims that Ms. Hill was constitutionally ineffective, which makes his waiver of counsel involuntary because, as he puts it, he was forced to choose between "incompetent" counsel "or no counsel at all." Appl. for COA at 6.

We need not decide whether and to what extent Mr. Fields has failed to exhaust or waived his present involuntary-waiver claim. We refuse to grant a COA because we do not think reasonable jurists could debate the district court's denial of habeas relief.

The district court, acknowledging that it owed AEDPA deference to the OCCA's conclusion that Mr. Fields knowingly and voluntarily waived his right to counsel, reasoned as follows:

> The record confirms that, on August 22, 2007, the trial court held a status conference to resolve the issue of Petitioner's stated dissatisfaction with his appointed counsel. Petitioner's court-appointed counsel, Marny Hill, requested and was granted an opportunity to explain to the trial judge, outside the presence of Petitioner and the prosecutor, the disagreements she had with Petitioner's defense strategy. After returning to the courtroom, the trial judge noted on the record that during the course of his criminal case, Petitioner had been represented by six (6) different attorneys. She advised Petitioner that while he had a right to effective representation of counsel, he did not have a right to "attorney shop." She also advised him that he had the right to represent himself. The trial judge insured that Petitioner understood the charge against him, that he understood the plea agreement offered by the state, and that he understood the range of punishment he faced if he proceeded to trial. She went on to explain the advantages of having an experienced attorney, like Ms. Hill, represent him during trial. She further stated that Ms. Hill had filed

8

motions requested by Petitioner and they had been overruled, and that if Petitioner chose to represent himself and filed the motions again, she would overrule them again. The trial judge urged Petitioner to keep Ms. Hill as his attorney because she had worked hard for him, and she wished to continue representing him. She also stated that no one was forcing him to represent himself. The choice he faced was whether he wanted to be represented by an attorney or to proceed with self-representation. Petitioner expressed his concern that Ms. Hill was "scared" of the police officers. Ms. Hill made a record that she was not afraid of the police officers and that she had not been threatened in any way. Despite those assurances from Ms. Hill and the admonishments by the trial judge, Petitioner decided to proceed with self-representation. The trial judge specifically found that "he knowingly and has voluntarily made an intelligent decision to represent himself." Ms. Hill agreed to serve as standby counsel.

. . . .

. . . [U]pon careful review of the record, the Court finds nothing to suggest that the OCCA's finding that Petitioner voluntarily waived his right to counsel under these circumstances fell afoul of AEDPA's "unreasonableness" standard. Furthermore, Petitioner's factual allegations that he was forced to waive his right to counsel do not constitute clear and convincing evidence sufficient to undermine the state courts' contrary factual determination that he voluntarily waived his right to counsel. Petitioner is not entitled to habeas corpus relief on this claim.

R., Vol. 1, at 269–72 (citations omitted) (quoting transcript of state trial court status hearing).

We are unable to add anything to the district court's thorough analysis. We agree that the OCCA's decision finding Mr. Fields's waiver of counsel knowing and voluntary was not contrary to or an unreasonable application of clearly established federal law. And we see no basis on which reasonable jurists could disagree. We therefore deny a COA.

9

**B. Other Claims**

The other two claims put forward in Mr. Fields's COA application have a common factual basis, so we consider them together. Mr. Fields asserts that he was erroneously denied the opportunity at trial to present the testimony of a handwriting expert, who allegedly would have testified that certain police reports filed by the arresting officers in this case were forged. Mr. Fields also contends that appellate counsel in his second direct appeal to the OCCA was ineffective for failing to raise this issue.

In her *in camera* meeting with the trial court, Ms. Hill (standby counsel for Mr. Fields) explained that although Mr. Fields wished to hire a handwriting expert, she had advised him that doing so would be unhelpful because the police reports were not admissible at trial. *See* R., Vol. 1, at 271. The trial court later denied Mr. Fields's motion for a handwriting expert because the police officers themselves could be questioned about the handwriting on their reports. *See id.* Following his conviction, Mr. Fields hired a handwriting expert, Brenda Petty, who opined that on one of the police reports, the printed name of "J. Wheeler" had been "forge[d]." *Id.* at 211 (Aff. of Brenda Petty, dated Jan. 11, 2008). Ms. Petty's affidavit was available to Thomas Purcell, Mr. Fields's appellate counsel, but Mr. Purcell did not present the issue to the OCCA.

It is not totally clear whether Mr. Fields included these claims in his federal habeas application. He alerted the district court to the forgery issue (and appellate counsel's failure to raise it) in a reply brief in January 2010, *see id.* at 203–09 (Reply to Resp't's Resp. in Opp., filed Jan. 4, 2010), and in a supplemental filing in November 2010, *see id.*

10

at 251–53 (Letter from Mr. Fields to the Hon. Claire V. Eagan, dated Nov. 10, 2010)—in each case several months after his habeas application was filed. The district court construed the forgery issue as part of Mr. Fields's involuntary-waiver claim, concluding that "[t]he record does not demonstrate that Petitioner was forced to waive his right to counsel based on the trial court's refusal to allocate funds to pay for a handwriting expert." *Id.* at 272. Mr. Fields apparently *did* present these claims in his subsequent postconviction application in state court, to which the OCCA applied a procedural bar. *See id.* at 8–9 (Pet. for Writ of Habeas Corpus, filed Aug. 26, 2009) (stating that these claims were presented to the OCCA). We invoke our discretion to consider these claims on the merits because we can comfortably reject them. *See Revilla v. Gibson*, 283 F.3d 1203, 1211 (10th Cir. 2002) ("We therefore invoke our discretion to bypass complex issues of exhaustion and procedural bar to reject the claim on the merits . . . ." (citations omitted)).

The trial court's refusal to appoint a handwriting expert for Mr. Fields raises, at most, the prospect of an error under state law. And of course, "[f]ederal habeas review is not available to correct state law evidentiary errors." *Ochoa v. Workman*, 669 F.3d 1130, 1144 (10th Cir. 2012) (quoting *Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999)) (internal quotation marks omitted). Because our task in habeas cases is to vindicate an applicant's constitutional rights, Mr. Fields is entitled to relief only if the error he alleges was "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Revilla*, 283 F.3d at 1212

11

(alteration omitted) (quoting *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000)) (internal quotation marks omitted). Mr. Fields simply cannot make that showing.

Indeed, we doubt the trial court erred at all. In this case, the police reports were not admissible—and were not admitted—as substantive evidence at trial, so whether or not they revealed signs of forgery was irrelevant. The arresting officers who filed the reports testified at trial, and the record reveals extensive questioning about their reports.[2] To the extent that Mr. Fields sought to use the reports as extrinsic evidence of forgery for impeachment purposes, the Oklahoma Rules of Evidence prohibited him from doing so. *See Douglas v. State*, 951 P.2d 651, 667 (Okla. Crim. App. 1997) ("[Okla. Stat. tit. 12, § 2608(B)] prohibits the use of extrinsic evidence to impeach a witness with specific instances of conduct to attack or support the credibility of the witness."). Finally, Mr.

---

[2]      As the district court found:

> Officer White testified that in preparing Mr. Carter's witness statement, he wrote down what Mr. Carter said and that Officer Wheeler signed the statement as the interviewing officer. He readily admitted that he failed to check the box on the form indicating that he had prepared the statement and characterized the failure as an "oversight." Officer Wheeler testified that he believed the handwriting on Mr. Carter's statement was Officer White's and that he, Officer Wheeler, had written, not signed, his name at the bottom of the statement. Officer Wheeler also testified that although they do not "sign" documents for other officers, it is common for officers to "list" other officers' names on reports.

R., Vol. 1, at 271–72 n.3 (citations omitted). We note that even if Mr. Fields's forgery claim were relevant, this last bit of testimony from Officer Wheeler casts considerable doubt on it. The "J. Wheeler" on the police report that Ms. Petty alleges was "forge[d]" was not a signature; rather, it appeared in "printed handwriting," which in Ms. Petty's opinion was attributable to Officer Wheeler. *Id.* at 253.

Fields does not contend that he was unable to cross-examine the officers. We thus see no error, much less "grossly prejudicial" error, in the trial court's refusal to appoint a handwriting expert, and we reject Mr. Fields's claim. *Revilla*, 283 F.3d at 1212 (quoting *Fox*, 200 F.3d at 1296) (internal quotation marks omitted). Furthermore, because appellate counsel "need not raise meritless issues," Mr. Purcell was not ineffective in failing to present the claim on appeal. *Smith v. Workman*, 550 F.3d 1258, 1268 (10th Cir. 2008). We do not think reasonable jurists could debate these conclusions, so we deny a COA as to both claims.

### III. CONCLUSION

For the reasons stated, we **DENY** Mr. Fields a COA and **DISMISS** this matter.

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge