**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 14, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DAVID R. BROWN,

           Petitioner-Appellant,

v.

RAY ROBERTS; ATTORNEY
GENERAL OF KANSAS,

           Respondents-Appellees.

No. 11-3085
(D.C. No. 5:09-CV-03248-SAC)
(D. Kan.)

---

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

---

Before **KELLY**, **HARTZ**, and **HOLMES**, Circuit Judges.

---

David R. Brown, a Kansas state prisoner proceeding pro se,[1] seeks a

certificate of appealability ("COA") to challenge the district court's denial of his

application for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.

---

[*]     This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

    After examining the appellate record, this three-judge panel determined unanimously that oral argument would not be of material assistance in the determination of this appeal.  *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

[1]     Because Mr. Brown is proceeding pro se, we construe his filings liberally.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Van Deelen v. Johnson*, 497 F.3d 1151, 1153 n.1 (10th Cir. 2007).

Exercising jurisdiction under 28 U.S.C. § 1291, we deny Mr. Brown a COA.

# I

In 1997, Mr. Brown was convicted in Kansas state court on charges of aggravated robbery and kidnaping.[2] Mr. Brown filed a notice of appeal with the state appellate court in 1997, but his counsel failed to docket or further pursue the appeal.

Relevant for our purposes, in 2005, Mr. Brown filed a federal habeas application pursuant to 28 U.S.C. § 2254, challenging his 1997 convictions and claiming, *inter alia*, "that [his] court-appointed attorneys were ineffective because they failed to pursue appeals in a timely manner." *Brown I*, 177 F. App'x at 775. The district court dismissed the application as time barred, and Mr. Brown appealed. A panel of this court held that dismissal was proper, but not on the same ground as that articulated by the district court. Because the Kansas state courts had never entered a formal order dismissing the 1997 appeal, and thus Mr. Brown's direct appeal potentially "remain[ed] alive," *id.* at 777, we concluded that "reasonable jurists could debate whether the district court was correct in its procedural ruling dismissing the petition as time barred," *id.* at 778. Accordingly,

---

[2] Mr. Brown had previously been convicted in state court for aggravated armed robbery in 1981 and was "sentenced as a habitual offender to ten to forty years in prison." *Brown v. Roberts* (*Brown I*), 177 F. App'x 774, 775 (10th Cir. 2006). He won postconviction relief in 1992 and received a reduced sentence and conditional release. *Id.*

we vacated the district court's judgment dismissing the petition as to the 1997 convictions as time barred, and remanded to the district court "with instructions to dismiss the petition without prejudice for failure to exhaust available remedies in state court." *Id.* at 780.[3]

Mr. Brown returned to the state courts and sought leave to docket his direct appeal out of time. The Kansas Court of Appeals summarily denied his motion on May 1, 2007, and the Kansas Supreme Court affirmed the denial on June 21, 2007.

Mr. Brown filed a second § 2254 application with the federal district court in 2007, again raising various constitutional claims. The district court dismissed without prejudice for failure to exhaust all state court remedies. The district court observed that under *State v. Ortiz*, 640 P.2d 1255 (Kan. 1982), Kansas courts are permitted to entertain an untimely appeal where its untimeliness is due to counsel's failure to perfect and complete the appeal. Given that there was no indication that Mr. Brown had sought relief under the exception articulated in *Ortiz*, the district court concluded that state remedial action was not definitively foreclosed, and thus dismissed for failure to exhaust. The district court "advised [Mr. Brown] that if his direct appeal [wa]s not reinstated [under *Ortiz*], any

---

[3]     In his 2005 habeas application, Mr. Brown also brought challenges related to his 1981 conviction. *Brown I*, 177 F. App'x at 775. However, this court dismissed these challenges as constituting an impermissible second or successive habeas action. *Id.* at 776.

attempt to seek federal habeas corpus relief w[ould] be subject to the one year limitation period imposed by 28 U.S.C. § 2244(d)(1)." *Brown v. Roberts*, No. 07-3227-SAC, 2009 WL 352867, at \*2 (D. Kan. Feb. 12, 2009). Rather than proceed immediately to state court, however, Mr. Brown sought a COA from this court to appeal the district court's dismissal of his second § 2254 application. We denied his request, holding that "[b]ecause remedies under *Ortiz* may still be available, a reasonable jurist could not dispute the correctness of dismissing Mr. Brown's § 2254 application on exhaustion grounds." *Brown v. Roberts* (*Brown II*), 336 F. App'x 781, 783 (10th Cir. 2009) .

Mr. Brown then filed a "motion for exception" with the Kansas Court of Appeals seeking permission to file an out-of-time appeal under *Ortiz*. The Kansas appellate court clerk's office responded with a letter stating that Mr. Brown's 1997 appeal had been closed in June of 2007, and that "nothing more can be filed in the[] matter[]." R. at 112 (Ltr. from Jason P. Oldham to David Brown, dated Sept. 29, 2009).

Mr. Brown then filed another § 2254 application on November 16, 2009, which the district court dismissed as time barred based on two alternative grounds. *See id*. at 156–59 (Dist. Ct. Mem. & Order, dated Mar. 15, 2011). First, the court reasoned:

> The Supreme Court has instructed that *if* a state court enters an order allowing an appellant to file [an] out-of-time direct appeal, that resets the date a conviction becomes "final"

-4-

for purposes of 28 U.S.C. § 2244(d)(1)(A). . . . The mere "possibility that a state court may reopen direct review" does not render a state conviction and sentence nonfinal for purposes of § 2244(d)(1)(A). *Jimenez* [*v. Quarterman*, 555 U.S. 113, 120 n.4 (2009)] (quotation marks and citation omitted). "[W]here a state court *has in fact reopened direct review*, the conviction is rendered nonfinal for purposes of § 2244(d)(1)(A)." *Id.* (emphasis added).

In petitioner's case, the Kansas appellate court clerk's rejection of petitioner's latest attempt to reinstate his direct appeal did not render his 1997 conviction "final" for purposes of § 2244(d)(1)(A) under the narrow holding in *Jimenez* because no state court order granting petitioner leave to pursue his direct appeal out of time resulted.

Federal court orders have identified the legal status of petitioner's direct appeal in the state courts as being in an "appellate limbo" under Kansas law, and have twice advised petitioner that reinstatement of his direct appeal is the only avenue available for pursuing federal habeas corpus review in a timely manner. Petitioner's lack of success in the state courts arguably establishes that reinstatement of his direct appeal under *Ortiz* is now foreclosed, which essentially leaves him with no remedies to pursue regarding his direct appeal in the state courts. Although petitioner may be correct in contending that he has now exhausted state court remedies, he is still unable to establish that he filed the present § 2254 application within one year from the date his 1997 conviction became "final" for purposes of § 2244(d)(1)(A).

*Id.* at 156–57. However, even though the district court concluded that Mr. Brown is "unable to establish that he filed the present § 2254 application within one year from the date his 1997 conviction became 'final,'" *id.* at 157, the court did not indicate the date of finality.

Alternatively, the district court articulated "an even more complicated

scenario to [Mr. Brown's] exhaustion of state court remedies, which nonetheless would warrant dismissal of this action as time barred." *Id.* Under this alternate ground for dismissal, the district court looked to the court filings and decisions in a separate but related state court action—an appeal involving Mr. Brown's "motion for arrest of judgment," which was filed in connection with both his 1981 conviction and his 1997 conviction. *See State v. Brown*, 182 P.3d 40, No. 96,774, 2008 WL 1946822, at *1 (Kan. Ct. App. May 2, 2008) (per curiam) (unpublished table decision). It explained:

> In Kansas Appeal No. 96774 filed by petitioner in June 2006 [the appeal regarding the motion for arrest of judgment], the Kansas Court of Appeals references in part petitioner's May 6, 2004, motion to correct an illegal sentence in Sedgwick County Case No. 96-CR-1729. The state district court treated this motion over petitioner's objection as a motion for collateral review under K.S.A. 60-1507 and denied relief. The Kansas Court of Appeals chose to independently review petitioner's claims and affirmed the district court's judgment, deeming that petitioner had waived or abandoned his claims, and that petitioner was entitled to no relief even if the appellate court were to reach the merits of those claims. The Kansas Supreme Court denied review on July 2, 2008.

R. at 157–58 (citations omitted). After taking judicial notice of the appellate briefs filed in the collateral proceedings, the district court noted that they indicate the fact that the Kansas district court granted Mr. Brown "leave to appeal out of time in Sedgwick County Case No. 96-CR-1729 [i.e., the appeal related to his 1997 convictions] pursuant to *Ortiz*, and note[d] petitioner's failure to successfully docket that appeal (Kansas Appeal No. 98458)." *Id.* at 158 (citation

-6-

omitted).

Construing this information liberally, the court effectively concluded that "one could argue the 'appellate limbo' of petitioner's direct appeal from his 1997 conviction was in fact resolved when the state district court granted petitioner leave to pursue an out of time appeal." *Id.* at 158–59. Consequently, the court reasoned, his "direct appeal became final in June 2007 when the Kansas Court of Appeals denied petitioner leave to docket that appeal out of time and the Kansas Supreme Court denied further review." *Id.* at 159. In light of the fact that Mr. Brown's collateral proceeding was "already pending in the state courts at that time," *id.*, the district court concluded that he qualified for immediate tolling of the limitations period pursuant to § 2244(d)(2) until the collateral proceedings were resolved on July 2, 2008. *See id.* It thus reasoned that, "[e]ven under this best case scenario . . . the instant habeas action, filed more than one year later in November 2009, would still be time barred." *Id.*

Mr. Brown now seeks a COA to appeal from the district court's dismissal of his third habeas application.

## II

### A

A COA is a jurisdictional prerequisite to this court's review of the merits of a habeas appeal. 28 U.S.C. § 2253(c)(1)(A); *accord Clark v. Oklahoma*, 468 F.3d 711, 713 (10th Cir. 2006) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 336

-7-

(2003)); *see also Gonzalez v. Thaler*, 132 S. Ct. 641, 647–49 (2012) (discussing, *inter alia*, the "clear" jurisdictional language in § 2253(c)(1)). We will issue a COA only if the applicant makes "a substantial showing of the denial of a constitutional right." *Woodward v. Cline*, 693 F.3d 1289, 1292 (10th Cir. 2012) (quoting 28 U.S.C. § 2253(c)(2)) (internal quotation marks omitted); *Clark*, 468 F.3d at 713. "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further." *Dulworth v. Jones*, 496 F.3d 1133, 1136–37 (10th Cir. 2007) (quoting *Miller-El*, 537 U.S. at 327) (internal quotation marks omitted).

When the district court denies relief to an applicant "on procedural grounds, the applicant faces a double hurdle. Not only must the applicant make a substantial showing of the denial of a constitutional right, but he must also show 'that jurists of reason would find it debatable . . . whether the district court was correct in its procedural ruling.'" *Coppage v. McKune*, 534 F.3d 1279, 1281 (10th Cir. 2008) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); *see also Gonzalez*, 132 S. Ct. at 648. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Woodward*, 693 F.3d at

1292 (quoting *Slack*, 529 U.S. at 484) (internal quotation marks omitted).

**B**

A prisoner in state custody must file his federal habeas petition "within the one-year limitation period set forth in [28 U.S.C.] § 2244(d)(1)." *Sigala v. Bravo*, 656 F.3d 1125, 1126 (10th Cir. 2011); *see Gonzalez*, 132 S. Ct. at 652–53. The one-year period runs from the latest of four specified dates in 28 U.S.C. § 2244(d)(1). Pertinent for our purposes, it runs from "the date on which the judgment [of conviction] became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). However, the limitation period is tolled both during the pendency of "properly filed application[s] for State post-conviction or other collateral review with respect to the pertinent judgment," *id.* § 2244(d)(2), and, in "rare and exceptional circumstances," for equitable purposes, *Sigala*, 656 F.3d at 1127 (quoting *York v. Galetka*, 314 F.3d 522, 527 (10th Cir. 2003)) (internal quotation marks omitted). At the end of our analysis, we conclude that Mr. Brown's petition is untimely. While we arrive at that conclusion through a somewhat different path than that employed by the district court, we find that reasonable jurists could not disagree with the district court's ultimate *resolution* in dismissing the petition.

We proceed to identify the date Mr. Brown's convictions went final. The respondent first contends that Mr. Brown's convictions went final in 1997 because he failed to perfect his appeal as required under Kansas law. From the

record, it appears as if Mr. Brown was sentenced on June 25, 1997. Under the rules then applicable, he had ten days from the date the judgment of sentence was entered in his criminal case in which to file a notice of appeal, *see* KAN. STAT. ANN. § 22-3608(c) (1997) ("For crimes committed on or after July 1, 1993, the defendant shall have 10 days after the judgment of the district court to appeal."), and twenty-one days from the date the notice of appeal was filed in which to file a docketing statement, *see* Kan. Sup. Ct. R. 2.041(a). Mr. Brown's attorney "fax filed a Notice of Appeal on July 1, 1997"—properly within the ten-day time period as required under KAN. STAT. ANN. § 22-3608. R. at 56 (Ltr. from Michael C. Brown to Kristi L. Barton, dated Jan. 31, 2005). Consequently, under Kan. Sup. Ct. R. 2.041(a), Mr. Brown should have filed a docketing statement by July 22, 1997—twenty-one days after he filed a notice of appeal. Of course, no such docketing statement was filed.

Thus, as a threshold matter and outside of any exceptions, the initial "conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A), in Mr. Brown's case was July 22, 1997. On that date, he could no longer seek direct review due to the fact that his appeal could be deemed abandoned under state law. *See* Kan. Sup. Ct. R. 5.051 (1997) (noting that the failure to file a timely docketing statement "shall be deemed to be an abandonment of the appeal"). Under the "anniversary method" applicable in this circuit, the one-year limitations period would have begun running the next

day, July 23, 1997, and, absent any tolling, would have ended on July 23, 1998. *See United States v. Hurst*, 322 F.3d 1256, 1260–61 (10th Cir. 2003). The instant petition was filed on November 16, 2009, over eleven years after the limitations period would have expired under the latter sequence.

Despite the foregoing, however, this court concluded in 2006, for various reasons, that Mr. Brown should have the opportunity to return to state court in order to determine whether he could docket his direct appeal out of time under state procedural law. *See Brown I*, 177 F. App'x at 777–78. We articulated that Mr. Brown's direct appeal "may remain alive" because:

> [T]he [state] district court never entered an order dismissing [his] appeal despite the mandatory language of [Kan. Sup. Ct. R. 5.051 (1997)]. . . . Deepening the mystery over the status of Mr. Brown's appeal, the Kansas Supreme Court revised Rule 5.051 in 2005 such that the failure to file a timely docketing statement "shall be *presumed* to be an abandonment of the appeal and the district court *may* enter an order dismissing the appeal." Kan. Sup. Ct. R. 5.051 (200[6] ed.) (emphasis added). It is not clear, as a matter of Kansas procedural law, whether Mr. Brown's direct appeal is now governed by the old "deemed" abandoned language and mandatory dismissal, or the new "presumed" abandoned language and optional dismissal.

*Id.* In addition to the uncertainty as to the date of finality in Mr. Brown's case that the 2005 revision of Rule 5.051 created, the Supreme Court of Kansas has suggested, in a case prior to that revision, that Rule 5.051 requires the entry of a dismissal order by the state district court in order for an improperly docketed appeal to be finally dismissed. *See City of Kansas City v. Lopp*, 4 P.3d 592, 594

(Kan. 2000) ("Rule 5.051 sets forth that *after an appeal is dismissed* by the district court, the dismissal is final 'unless the appeal is reinstated by the *appellate court* having jurisdiction of the appeal.'" (first emphasis added) (quoting Kan. Sup. Ct. R. 5.051)). Thus, in the final disposition in *Brown I*, we appropriately did not determine the date Mr. Brown's conviction went final.[4] Instead, we remanded to the district court with instructions to dismiss Mr. Brown's petition without prejudice in order to permit him the opportunity of returning to state court in order to reinitiate his direct appeal. *See id.* at 779. Mr. Brown ultimately was unsuccessful in that endeavor.

Indeed, on return to state court, the Kansas Court of Appeals denied Mr. Brown's motion to docket his appeal out of time on May 1, 2007. Moreover, the Kansas Supreme Court refused further review on June 21, 2007. Thus, any ambiguity in the status of the finality of Mr. Brown's conviction was dispelled by entry of these orders. The Kansas state courts spoke and thereby effectively pegged the date for when Mr. Brown's appeal became final under Kansas law—June 21, 2007.[5]

---

[4] It must be emphasized that we adopted only "the best course" of action "[g]iven the uncertain status of Kansas procedural law" so that Mr. Brown could "pursue his 1997 state court appeal and *give the state courts an opportunity to determine the status of his direct appeal in the first instance.*" *Brown I*, 177 F. App'x at 779 (emphasis added); *see also id.* at 778 ("Kansas law may yet permit Mr. Brown to docket the appeal.").

[5] Upon the filing of another habeas petition in 2007, the district court (continued...)

-12-

Because Mr. Brown did not seek further review from the Supreme Court of

the United States, the one-year statutory period under § 2244(d)(1) would have

---

[5](...continued)
concluded, and we agreed, that Mr. Brown had a limited possibility of reopening his appeal under the doctrine articulated by the Kansas Supreme Court in *State v. Ortiz*, 640 P.2d 1255 (Kan. 1982). *See Brown*, No. 07-3227-SAC, 2009 WL 352867, at *2; *Brown II*, 336 F. App'x at 783. On return to state court, however, the Chief Deputy Clerk of the Kansas Appellate Courts sent Mr. Brown a letter informing him that *nothing* further could be filed in the matter as his appeal was closed as of June 21, 2007. Indeed, Mr. Brown concedes that he was denied the opportunity to reopen his appeal under *Ortiz*. *See* R. at 23 (Pet'r's Aff. Supp. Pet. for Writ of Habeas Corpus, filed Nov. 16, 2009) ("I[] was denied exception under [the] *Ortiz* Rule[.]").

In *Jimenez*, the Supreme Court considered whether a state-court order granting a defendant the opportunity to file an out-of-time appeal renders his judgment "non-final" for purposes of § 2244(d)(1)(A). 555 U.S. at 119–21. Relying on the plain language of § 2244(d)(1)(A), the Court concluded that it did because "the finality of a state-court judgment is expressly defined by statute as 'the conclusion of direct review or the expiration of the time for seeking such review.'" *Id.* at 119 (quoting § 2244(d)(1)(A)). Inasmuch as an order reopening direct review before a petitioner seeks federal habeas relief is an acknowledgment that direct review has not in fact concluded, the relevant "judgment is not yet 'final' for purposes of § 2244(d)(1)(A)." *Id.* at 121. The underlying decision in *Brown II* was an affirmative recognition that Mr. Brown could *possibly* obtain the right to file an out-of-time direct appeal—thus reopening direct review. *See Brown II*, 336 F. App'x at 782 (acknowledging that the Kansas courts denied Mr. Brown the opportunity to docket his direct appeal out of time). However, Mr. Brown did not obtain an order reopening direct review, and therefore was not "grant[ed] . . . the right to file an out-of-time direct appeal." *Jimenez*, 555 U.S. at 121. Consequently, "the *possibility* that [Kansas] court[s] [could] reopen direct review 'd[id] not render convictions and sentences that are no longer subject to direct review nonfinal.'" *Id.* at 120 n.4 (emphasis added) (quoting *Beard v. Banks*, 542 U.S. 406, 412 (2004)). That is, the fact that a *possibility* to reopen review of a conviction exists does not imply that the conviction cannot be viewed as *final* if there is no other means for the petitioner (Mr. Brown) to reinstate direct review. *See id.*

begun on the expiration of "the time for filing a certiorari petition," *see Jimenez*, 555 U.S. at 119 (quoting *Clay v. United States*, 537 U.S. 522, 527 (2003)) (internal quotation marks omitted); *Woodward*, 693 F.3d at 1292—that is,  ninety days later, on September 19, 2007, *see Woodward*, 693 F.3d at 1292; *Harris v. Dinwiddie*, 642 F.3d 902, 906 n.6 (10th Cir. 2011) (suggesting that convictions become final "when the ninety-day time period for filing a certiorari petition with the United States Supreme Court expire[s]."). This date is indisputably "the date on which [Mr. Brown's] judgment became final" because it established that Mr. Brown no longer had the opportunity, in the ordinary course, to proceed with his appeal. *See* 28 U.S.C. § 2244(d)(1) ("The limitation period shall run from . . . (A) the date on which the judgment became final by the conclusion of direct review *or the expiration of the time for seeking such review . . . .*" (emphasis added)); *see also Jimenez*, 555 U.S. at 119 ("[D]irect review cannot conclude for purposes of § 2244(d)(1)(A) until the 'availability of direct appeal['] . . . has been exhausted." (citations omitted) (quoting *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994))).[6] Accordingly, the one year limitations period began on September 20,

---

[6] The fact, as the district court suggested, that a Kansas state district court may have granted Mr. Brown the right to docket his appeal out of time does not change the ultimate denial of his request by the Kansas appellate courts, which established the date Mr. Brown's conviction was no longer subject to direct review under § 2244(d)(1)(A).  That is, Mr. Brown's state appeal is no longer in "appellate limbo," *see Brown I*, 177 F. App'x at 777, as the Kansas appellate courts have rendered a final decision refusing him the opportunity to docket his

(continued...)

2007, *see Hurst*, 322 F.3d at 1260–61, and Mr. Brown would have had until September 20, 2008 to file his federal habeas petition.

## C

Nonetheless, turning to the issue of statutory tolling, it is apparent from the record before us that on May 6, 2004, Mr. Brown filed a motion to correct illegal sentences with respect to both his 1981 and 1997 convictions in the Sedgwick County District Court. *Brown*, 2008 WL 1946822, at *1. Similarly, he filed a "motion for arrest of judgment" in the same court on August 5, 2004. *See id.* "The limitation period [under § 2244(d)(1)] is tolled for '[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending.'" *Sigala*, 656 F.3d at 1127 (second alteration in original) (quoting § 2244(d)(2)); *see Woodward*, 693 F.3d at 1292.

The state district court denied both of Mr. Brown's motions, construing the first as a collateral attack on his convictions raised under KAN. STAT. ANN. § 60-1507. *See Brown*, 2008 WL 1946822, at *1. On May 2, 2008, the Kansas Court of Appeals affirmed the district court, finding that Mr. Brown had waived many of his arguments, and, even if he had properly presented them, they would likely

<hr>

[6](...continued)
appeal out of time. From our review of Kansas law, there does not appear to be any other means for him to receive direct review.

-15-

have been unsuccessful on the merits. *See id.* at \*1–2. The Kansas Supreme Court denied review of Mr. Brown's appeal from the Kansas Court of Appeals's order on July 2, 2008. Thus, because Mr. Brown participated in relevant collateral proceedings attacking his conviction during a substantial portion of the period during which his statutory limitations clock otherwise would have been ticking, the one-year limitations period must be partially tolled. *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.").

While it is less than clear from the record, the respondent concedes that Mr. Brown raised the same claims in the latter proceedings as he now does in the instant federal habeas petition. *See* Aplee. Br. at 12–13 ("At that time [i.e., when Mr. Brown's conviction went final in 2007], Petitioner had pending an appeal from the denial of his 2004 post-conviction motions, so as the district court found, the federal statute of limitations was immediately tolled."). Thus, the one-year clock was tolled until the close of Mr. Brown's state collateral proceedings. In this case, those proceedings—initially filed on May 6, 2004—concluded on July 2, 2008, when the Kansas Supreme Court denied review of Mr. Brown's appeal from the Court of Appeals's dismissal of his collateral motions, and the one-year AEDPA limitations period could not be tolled further for purposes of

-16-

seeking discretionary review from the U.S. Supreme Court. *See Lawrence v. Florida*, 549 U.S. 327, 332 (2007) ("[An] application for state postconviction review is . . . not 'pending' after the state court's postconviction review is complete, and § 2244(d)(2) does not toll the 1-year limitations period during the pendency of a petition for certiorari."). We must therefore add the number of days Mr. Brown's collateral proceedings were pending to the end of the presumptive statutory limitations period. *See Dinwiddie*, 642 F.3d at 906 n.6 (conducting the analysis in a similar fashion). In this case, the collateral proceedings were pending for 286 days of the one-year limitations period. Extending the limitations period an additional 286 days from September 20, 2008—the date it would have otherwise expired, *see id.*—we conclude that Mr. Brown had to file his petition by July 2, 2009.[7] The instant petition was filed on

---

[7]     Mr. Brown's 2007 petition—which, as noted above, was dismissed without prejudice to permit him to attempt to reopen his appeal under *Ortiz*—was filed during his state collateral proceedings. However, at that time, he seemingly did not alert the district court to the pendency of any such collateral proceedings. *See Brown II*, 336 F. App'x at 782 ("Mr. Brown does not suggest that he has pursued any of his claims in state collateral proceedings."). And he did not, at least as apparent on the record before us, otherwise seek to preserve his federal habeas rights while he returned to state court to reopen his appeal under *Ortiz*. *Cf. Rhines v. Weber*, 544 U.S. 269, 277 (2005) (noting that a petitioner may obtain a "stay and abeyance . . . when the district court determines there was good cause for [his] failure to exhaust"); *Fairchild v. Workman*, 579 F.3d 1134, 1152 (10th Cir. 2009) ("When a petitioner raises a new claim in federal court that is not barred on other procedural grounds, the federal court may, in appropriate circumstance, hold the federal case in abeyance to allow the petitioner to take his unexhausted claim back to state court for adjudication."). Pro se litigants must

(continued...)

-17-

November 16, 2009, over four months later. Thus, it was filed outside of the AEDPA one-year limitations period and is therefore untimely.

Nor does this case merit the application of equitable tolling. Equitable tolling is available only in "rare and exceptional circumstances." *Sigala*, 656 F.3d at 1127 (quoting *York*, 314 F.3d at 527) (internal quotation marks omitted). "[It] would be appropriate, for example, when a prisoner is actually innocent, when an adversary's conduct—or other uncontrollable circumstances—prevents a prisoner from timely filing, or when a prisoner actively pursues judicial remedies but files a defective pleading during the statutory period." *York*, 314 F.3d at 527 (quoting *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000)) (internal quotation marks omitted). Mr. Brown alleges no facts supporting the application of equitable tolling, and after a thorough review of the record, we could find none. For these reasons, no tolling applies.

---

[7](...continued)
follow the same procedural rules as parties represented by counsel and should be equally aware of the gamut of their procedural options. *See, e.g.*, *Shrader v. Biddinger*, 633 F.3d 1235, 1249 n.9 (10th Cir. 2011) ("[P]ro se litigants must follow the same rules of procedure that govern other litigants."); *Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 549 (10th Cir. 2000) ("Although pro se litigants get the benefit of more generous treatment in some respects, they must nonetheless follow the same rules of procedure that govern other litigants."). It is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see also United States v. Viera*, 674 F.3d 1214, 1216 n.1 (10th Cir. 2012) (even though courts "liberally construe [a pro se litigant's] filing[s] . . . [they] do not assume the role of advocate") (citation omitted) (internal quotation marks omitted).

### III

For the foregoing reasons, we conclude that reasonable jurists could not disagree with the district court's procedural dismissal of Mr. Brown's petition as time barred.  Accordingly, we **DENY** Mr. Brown's request for a COA and **DISMISS** this matter.

ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge